**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| | ) | |
| GV KB Store LLC *et al.*, | ) | Case No. 1:20-cv-21815 |
| | ) | |
| Plaintiffs, | ) | Judge Darrin P. Gayles |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Scottsdale Insurance Company | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT SCOTTSDALE INSURANCE COMPANY'S**
**MOTION TO DISMISS PLAINTIFS' COMPLAINT**
**AND MEMORANDUM IN SUPPORT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Scottsdale

Insurance Company ("Scottsdale") moves to dismiss Plaintiffs' Complaint for failure to state a

claim. Plaintiffs seek coverage under policies that expressly exclude coverage for loss or damage

resulting from a virus and, in any event, cannot identify any civil authority that precludes access

to their property. Scottsdale also moves to dismiss for lack of personal jurisdiction pursuant to

Rule 12(b)(2).

## I.      INTRODUCTION.

Plaintiffs, two ice cream restaurants in Florida, allege they have policies that provide

coverage for the business losses they suffered stemming from the SARS-CoV-2 coronavirus and/or

its resulting disease, COVID-19. However, Plaintiffs' policies (which are identical) both contain

a virus exclusion, which expressly excludes coverage in this case:

> We will not pay for loss or damage caused by or resulting from any
> virus, bacterium or other microorganism that induces or is capable
> of inducing physical distress, illness or disease.

1

*See* Complaint Exs. A & B (Exclusion Of Loss Due To Virus Or Bacteria § B); *see also* Policy

Excerpts attached hereto as Ex. A.

It is black-letter law that this Court should apply the policy – including the clear and

unambiguous virus exclusion – as written.   This Court repeatedly has enforced clear and

unambiguous policy exclusions, including similar mold/bacteria exclusions.  *See, e.g., United*

*Specialty Ins. Co. v. Davis*, No. 18-cv-62451-Smith, 2020 WL 1445484 at *3-5 (S.D. Fla. Feb. 19,

2020) (holding alleged "injuries are excluded from coverage under the Policy by the Mold

Exclusion").  This Court should do the same here.  While the coronavirus is a health concern, this

is not grounds to rewrite Plaintiffs' insurance contract.   As the Florida Supreme Court has

cautioned, courts should not "rewrite contracts, add meaning that is not present, or otherwise reach

results contrary to the intentions of the parties." *Deni Assocs. Of Fla., Inc. v. State Farm Fire &*

*Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998) (quoting *State Farm Mutual Auto. Ins. Co. v.*

*Pridgen*, 498 So. 2d 1245 (Fla. 1986)).

In apparent recognition that the virus exclusion plainly bars coverage in this case, Plaintiffs

do not mention it anywhere in the Complaint.  Instead, Plaintiffs allege that their policies provide

coverage under "Business Income and Extra Expense" and "Additional Coverages-Civil

Authority" provisions.  The virus exclusion, however, plainly applies to and bars coverage under

these provisions.

Furthermore, "Business Income and Extra Expense" and "Additional Coverages-Civil

Authority" coverage only applies where Plaintiffs have been prohibited from accessing their

premises and where there has been a suspension of operations.  *See* Ex. A, Business Income (And

Extra Expense) Coverage Form §§ A & A(5)(a).  Neither occurred here.  Plaintiffs concede that

their restaurants have been permitted to continue providing customers with take-out and delivery

2

services.  *See* Compl. ¶ 52.

Accordingly, Plaintiffs have no claim for coverage under the terms of the Policy, and Plaintiffs' Complaint should be dismissed with prejudice as a matter of law.[1]

## II.    BACKGROUND.

### A.    Complaint Allegations.

Plaintiffs GV KB Store LLC and GV Siestakey LLC (collectively "Plaintiffs") allege they "own operate, manage and control restaurants that serve ice cream and related food and beverages."  *See* Compl. ¶ 19.  Plaintiffs allege defendant Scottsdale Insurance Company issued commercial property insurance policy numbers CPS3308111 and CPS3308113.  *See* Compl. ¶ 23; *see also* Compl. Exs. A & B (collectively, the "Policy" or "Policies").

Generally, Plaintiffs allege that the Policies provide coverage under "Business Income and Extra Expense" and "Additional Coverages-Civil Authority" provisions.  *See* Compl. ¶¶ 37-39. Plaintiffs allege that certain governmental orders from the Florida Governor and the Mayor of Miami-Dade County restricted operating times for restaurants "other than for delivery."  *See* Compl. ¶ 48-49.  Plaintiffs further concede that they have been permitted to continue operation of their restaurants "for take-out and delivery."  *See* Compl. ¶ 52.  Plaintiffs allege that as a "direct result of the existence of the national COVID-19 emergency" they have incurred "business income loss and other expenses."  *See* Compl. ¶ 52.

Based on these allegations, Plaintiffs assert claims for declaratory judgment and anticipatory breach of contract.  *See* Compl. Counts I & II.  Plaintiffs also seek certification of a national class and a Florida subclass of insureds with policies issued by Scottsdale.  *See* Compl.

---

[1]  Additional grounds to exclude coverage under the Policy exist, including that the coronavirus has not caused direct physical damage to the covered property.  In filing this motion to dismiss, Scottsdale not waiving the right to raise such additional grounds at a later time, if necessary.

¶¶ 70-71.  Notably, Plaintiffs allege they seek a "proposed class of policyholders" whose policies "do not include exclusions for pandemics or presence of viruses."  *See* Compl. ¶ 10.  Yet here, Plaintiffs' own Policies contain just such an express virus exclusion.

### B.   Relevant Terms Of The Subject Policies.

Generally, the Policies provide coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  *See* Ex. A, Building And Personal Property Coverage Form § A.  More specifically, the Policies provide coverage for loss of "Business Income" as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*See* Ex. A, Business Income (And Extra Expense) Coverage Form § A.  Additional "Civil Authority" coverage is provided "[w]hen a Covered Cause of Loss causes damage to property other than the property at the described premises . . . caused by action of civil authority that prohibits access to the described premises[.]"  *See* Ex. A, Business Income (And Extra Expense) Coverage Form § A(5)(a).  In short, regardless of provision, the Policies only provide coverage for a "Covered Cause of Loss."

The definition of a "Covered Cause of Loss," however, clearly and unambiguously states that coverage is not provided for losses *excluded* from the policy:

> When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

*See* Ex. A, Causes Of Loss – Special Form § A.  The Policies, in turn, clearly and unambiguously

exclude losses caused by or resulting from a virus:

### EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

\* \* \* \*

A.  The exclusion set forth in Paragraph B. applies to **all coverage** under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

B.  We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

*See* Ex. A, Exclusion Of Loss Due To Virus Or Bacteria §§ A & B (emphasis added).

## III.   APPLICABLE LEGAL STANDARDS.

### A.   Motion To Dismiss.

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must proffer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*.  In other words, plaintiffs must "nudge their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Mere "labels and conclusions" or "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.  Applying these standards, a complaint that fails to allege a plausible claim for relief should be dismissed as a matter of law.  *See Iqbal* at 679; *Twombly* at 570.

### B.   Construction Of Insurance Policy Terms.

Because this case arises out of this Court's diversity jurisdiction, Florida law governs the interpretation of the insurance contract at issue. *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d

1226, 1230 (11th Cir. 2000).  "Florida courts start with 'the plain language of the policy, as bargained for by the parties' . . . '[i]f that language is unambiguous, it governs.'" *Id.* (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)).  "Courts may not put 'a strained and unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity.' . . . There must, in fact, be a 'genuine inconsistency, uncertainty or ambiguity in meaning.'" *Med. Imaging Sols. Grp., Inc. v. Hanover Ins. Co.*, No. 1:18-cv-20132-Gayles/Otazo-Reyes, 2018 U.S. Dist. LEXIS 163151 at *4-5 (S.D. Fla. Sept. 21, 2018) (internal quotations omitted). "A provision is not ambiguous merely because it requires analysis to interpret." *Id*. Furthermore, "[u]nless restricted by statute or public policy, insurance companies have the same right as individuals to limit their liability and impose conditions upon their obligations." *Canal Ins. Co. v. Giesenschlag*, 454 So. 2d 88, 89 (Fla. 2d DCA 1984); *see also Geico Gen. Ins. Co. v. Arnold*, 730 So. 2d 782, 784 (Fla. 3d DCA 1999) (enforcing bodily injury cap for uninsured motorist coverage).

Lastly, in announcing "the rule to be followed in the interpretation of exclusionary clauses in insurance policies," the Florida Supreme Court has cautioned that courts should not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Deni Assocs. Of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998) (quoting *State Farm Mutual Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245 (Fla. 1986)). "As a court, we cannot place limitations upon the plain language of a policy exclusion simply because we may think it should have been written that way." *Id.* at 1139. Indeed, "[a]lthough ambiguous provisions are construed in favor of the coverage, to allow for such a construction the provision must *actually* be ambiguous." *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005) (emphasis added).

6

IV.    **THE VIRUS EXCLUSION IN THE POLICIES BARS PLAINTIFFS' CLAIMS AS A MATTER OF LAW.**

This Court must apply the language of the Policies as written.  Here, the applicable language is clear and unambiguous:  the Policies expressly exclude from coverage any loss or damage caused by or resulting from a virus.  Specifically, the Policies provide as follows:  "We **will not pay for loss or damage caused by or resulting from any virus**, bacterium or other microorganism **that induces or is capable of inducing physical distress, illness or disease**."  Ex. A, Exclusion Of Loss Due To Virus Or Bacteria §§ A & B (emphasis added).  Furthermore, this virus exclusion expressly applies to "all coverage under all forms and endorsements" including "forms or endorsements that cover business income, extra expense or action of civil authority." *Id.*  There is no ambiguity whatsoever in this language.

Plaintiffs' claims fall squarely within the plain language of the Policies' virus exclusion because Plaintiffs allege that their losses were a "direct result" of the coronavirus:

> 25.    Coronaviruses are a type of virus that often cause respiratory diseases in humans . . . .
>
> * * * *
>
> 27.    Within months of COVID-19 being identified and named, the virus quickly spread from China to other parts of the world, including the United States . . . .
>
> * * * *
>
> 30.    Transmission of the coronavirus is particularly acute in places the public normally gathers to socialize, eat, drink, shop, be entertained, and go for recreation . . . .
>
> * * * *
>
> 51.    The civil authority orders expressly state that the closing of non-essential businesses, reductions in permitted operating hours, and social distancing restrictions placed on the public are necessary

010-9098-2177/1/AMERICAS

emergency measures to protect the health and safety of all residents in the nation intended to stop the spread of COVID-19 through human-to-human and surface-to-human contact with the virus.

52.     The nature of each Plaintiff's business is food and beverage service to the public and each Plaintiff's property is a place where individuals socialize and gather in close proximity. **As a direct result of the existence of the national COVID-19 emergency** Plaintiffs have a physical loss of their property for regular business operations including its food and beverage operations **other than for take-out and delivery**. The physical loss of the property has resulted in significant business income loss and other expenses.

*See* Compl. ¶¶ 25, 27, 30, 51-52 (emphasis added).

Plaintiffs plainly allege losses resulting from the coronavirus – a "virus . . . that induces or is capable of inducing physical distress, illness or disease" – which is a cause of loss or damage expressly excluded from coverage under the terms of the Policies. This Court must apply the clear and unambiguous Policy language as written. Indeed, this Court and other courts have enforced similar mold/bacteria exclusions under Florida law. *See, e.g., United Specialty*, 2020 WL 1445484 at *3-5 (holding alleged "injuries are excluded from coverage under the Policy by the Mold Exclusion"); *Rolyn Cos. v. R&J Sales of Texas, Inc.*, 671 F.Supp.2d 1314, 1332-1333 (S.D. Fla. 2009) (enforcing mold exclusion); *Boran Craig Barber Homes, Inc. v. Mid-Continent Casualty Co.*, No. 2:06-cv-89, 2009 WL 10670850 at *4-5 (M.D. Fla. Feb. 19, 2009) ("the mold exclusion clearly excludes coverage for any damage caused by or expenses incurred in remediating the mold"); *Clarendon America Ins. Co. v. Taylor Ranch, Inc.,* No. 8:07-cv-2015-T-17EAJ, 2009 WL 10671266 at *9 (M.D. Fla. Sept. 21, 2009) ("The Court has examined the Mold Exclusion . . . The plain language of the exclusion excludes coverage"); *Empire Indemnity Ins. Co. v. Winsett*, 325 Fed. Appx. 849, 850-851 (11th Cir. 2009) (enforcing mold exclusion); *see also Hathaway Development Co., Inc. v. Illinois Union Ins. Co.*, 274 Fed. Appx. 787, 792 (11th Cir. 2008) (enforcing mold/bacteria exclusion under Georgia law). This Court should apply the virus

8

exclusion as written and Plaintiffs' claims should be dismissed as a matter of law.[2]

## V.   THE CIVIL AUTHORITY PROVISION OF THE POLICIES DO NOT PROVIDE COVERAGE TO PLAINTIFFS.

Even if the virus exclusion somehow did not apply – and it does apply here – Plaintiffs still do not have any coverage under the Policies for their alleged losses.  Specifically, Plaintiffs do not have coverage under the Business Income (And Extra Expense) Coverage Form, which contains a "Civil Authority" coverage provision.

### A.   The Virus Exclusion Precludes Civil Authority Coverage.

No Civil Authority coverage exists here because coverage is excluded by the virus exclusion.  Specifically, Civil Authority coverage only exists where there is a "Covered Cause of Loss."  *See* Ex. A, Business Income (And Extra Expense) Coverage Form § A(5)(a).  A "Covered Cause of Loss," in turn, "means direct physical loss *unless* the loss is *excluded* or limited in this policy."  *See* Ex. A, Causes Of Loss – Special Form § A (emphasis added).

Furthermore, the virus exclusion itself makes clear that it "applies to all coverage under all forms and endorsements . . . including but not limited to forms or endorsements that cover property damage to buildings or personal property and *forms or endorsements that cover business income, extra expense or action of civil authority*."  *See* Ex. A, Exclusion Of Loss Due To Virus Or Bacteria § A (emphasis added).

Because the virus exclusion *excludes* coverage for loss or damage caused by or resulting

---

[2]  In fact, this Court repeatedly has enforced unambiguous policy exclusions in a variety of contexts.  *See, e.g., First Specialty Ins. Corp. v. GRS Management Associates, Inc.*, No. 08-81356-cv-Marra, 2009 WL 2524613 at *5 (S.D. Fla. Aug. 17, 2009) ("the substance in the swimming pool was a viral contaminant and a harmful microbe.  Thus, the pollutant exclusion applies here"); *Nova Casualty Co. v. Waserstein*, 424 F.Supp.2d 1325, 1333-1335 (S.D. Fla. 2006) (enforcing pollutant exclusion); *Century Surety Co. v. Hallandale Beach Service Station LLC*, No. 10-214-30-cv-Jordan, 2011 WL 13174906 at *4-5 (S.D. Fla. March 21, 2011) (enforcing "harmful material" exclusion).

from the coronavirus, there is no "Covered Cause of Loss," and Plaintiffs have no coverage under the Civil Authority provision – or any other provision – of the Policies as a matter of law.

### B.      No Order Has Prohibited Access To Plaintiffs' Premises.

Even absent the virus exclusion, no Civil Authority coverage exists because access to Plaintiffs' premises has not been prohibited.  Specifically, Civil Authority coverage only exists for "the actual loss of Business Income . . . caused by action of civil authority that **prohibits access** to the described premises[.]"  *See* Ex. A, Business Income (And Extra Expense) Coverage Form § A(5)(a) (emphasis added).

Plaintiffs, however, do not (and cannot) allege that access to their locations has been prohibited, let alone by any civil authority.  To the contrary, Plaintiffs expressly allege that the governmental orders from the Miami-Dade County Mayor and the Florida Governor allowed restaurants to continue pick-up, take out, and delivery operations.  *See* Compl.  ¶¶ 47, 48.  In fact, the Miami-Dade governmental order cited by Plaintiffs expressly permits restaurants to provide "delivery services, pick-up, or take out services" and provides for access to the premises for those purposes.  *See* March 17, 2020 Miami-Dade County Emergency Order 03-20 at ¶¶ 1-3 (attached as Ex. B).  The Florida Governor's Order cited by Plaintiffs permits restaurants to continue operating so long as they limit occupancy to 50%.  *See* Florida Executive Order 20-68 at § 3(A) (attached as Ex. C).  Consistent with these orders, Plaintiffs expressly admit that they have been permitted to continue "take-out and delivery."  Compl. ¶ 52.  By their own allegations, Plaintiffs, as operators of ice cream restaurants, have not been prohibited from accessing their premises.[3]

---

[3]  Plaintiff GV Siestakey LLC is not even located in Miami Dade County and is not subject to the Miami-Dade County order cited in the Complaint.  *See* Compl. ¶ 18 (alleging GV Siestakey LLC is located in Siesta Key, which is Sarasota County).  This Court may take judicial notice of the governmental orders cited by Plaintiffs. *See* Fed. R. Evid. 201(b) (allowing judicial notice of facts not subject to reasonable dispute where they are "capable of accurate and ready determination by

C.      **Plaintiffs Do Not Allege Damage To Other Property.**

Plaintiffs' claim for civil authority coverage fails for an additional reason as well:  civil authority coverage only exists "[w]hen a Covered Cause of Loss causes damage to property *other* than the property at the described premises[.]"  *See* Ex. A, Business Income (And Extra Expense) Coverage Form § A(5)(a) (emphasis added).  Here, Plaintiffs do *not* allege damage to any such *other* property.

In sum, the virus exclusion plainly excludes coverage under the Civil Authority provision of the Policies.  Even if there were no virus exclusion, Plaintiffs have not and cannot allege that access to their premises was prohibited, let alone because of damage to other property. Accordingly, Plaintiffs' claims should be dismissed as a matter of law.

VI.     **PLAINTIFFS HAVE NOT SUFFERED A SUSPENSION OF OPERATIONS.**

The Policies also only provide coverage for business income loss that arises from "a necessary 'suspension' of your 'operations.'"  *See* Ex. A, Business Income (And Extra Expense) Coverage Form § A.  "Suspension," is defined as the "slowdown or cessation of your business activities[.]"  *Id.* at F(6)(a).  Here, Plaintiffs do not allege that they have experienced any such slowdown or cessation of their business activities.  To the contrary, the governmental orders cited by Plaintiffs expressly authorize them to continue serving food to the public, and they admit in the Complaint that they have done so.  *See* Compl. ¶ 52 (alleging premises remain open for "take-out and delivery").  Furthermore, Plaintiffs cannot rely on any reduction in the number of customers served because "lessened demand does not constitute a suspension of business."  *CSX Corp. v.*

---

resort to sources whose accuracy cannot reasonably be questioned); *see also 10th St. Partners, LLC v. Cnty. Comm'n*, No. 8:11-cv-2362-T-33TGW, 2012 U.S. Dist. LEXIS 36359 at *2 (M.D. Fla. March 19, 2012) (taking judicial notice under Rule 201(b) of a resolution adopted by the county government).

010-9098-2177/1/AMERICAS

*North River Ins. Co.*, No. 3:08-cv-00531-J-25MCR, 2009 WL 10671267 at \*6 (M.D. Fla. Sept. 25, 2009) (citing cases).  Based on the plain allegations of the Complaint, there simply has been no suspension of operations.  Accordingly, no coverage exists and Plaintiffs' claims should be dismissed for this reason as well.

**VII.   ADDITIONAL GROUNDS FOR DISMISSAL.**

In addition to the grounds set forth above, certain of Plaintiffs' claims also fail for lack of personal jurisdiction under Rule 12(b)(2).  Specifically, in their Complaint, Plaintiffs purport to seek certification of a national class of insureds.  *See* Compl. ¶ 70.  Yet, this Court lacks personal jurisdiction over the claims of non-forum putative class members.  *See Bristol-Meyers Squibb Co. v. Super. Ct. of Cal.*, 137 S.Ct. 1773 (2017); *see also Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916 at \*4 n. 4 (D. Ariz. Oct. 2, 2017) (citing *Bristol-Meyers Squibb*).  No class exists or should exist, and the non-forum class claims should be dismissed for lack of personal jurisdiction.

Scottsdale acknowledges, however, that this Court previously has addressed this issue and has held that *Bristol-Meyer* does not prohibit the Court from exercising personal jurisdiction over non-forum putative class members.  *See Becker v. HBN Media, Inc.*, 314 F.Supp.3d 1342, 1344 (S.D. Fla. 2018).  Nonetheless, Scottsdale raises the issue in this brief for the record and in order to avoid waiver of the issue in any future proceedings.

**VIII.   CONCLUSION.**

As a matter of law and basic contract interpretation, Plaintiffs have no cognizable claims for coverage under the Policies.  Accordingly, this Court should dismiss Plaintiffs' claims with prejudice because Plaintiffs' claims cannot be saved through any amendment or re-pleading.

010-9098-2177/1/AMERICAS

Dated: July 28, 2020          Respectfully submitted,

/s/ Andrew R. Kruppa
Andrew R. Kruppa
Florida Bar No. 63958
E-mail: andrew.kruppa@squirepb.com
Amanda E. Preston
Florida Bar No. 123652
E-Mail: amanda.preston@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
200 S. Biscayne Blvd., Suite 4700
Miami, Florida 33131
Telephone: (305) 577-7000
Facsimile: (305) 577-7001

Aneca E. Lasley (pro hac motion forthcoming)
E-mail: aneca.lasley@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: (614) 365-2700
Facsimile: (614) 365-2499

Michael H. Carpenter (pro hac motion forthcoming)
E-mail: carpenter@carpenterlipps.com
**CARPENTER LIPPS & LELAND LLP**
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (614) 365-9145

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th of July 2020, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic

Filing to all counsel of record that are registered with the Court's CM/ECF system.

/s/ Andrew R. Kruppa
Andrew R. Kruppa

13

010-9098-2177/1/AMERICAS